Good morning, Your Honors. My name is Peter Spall. I'm a Deputy District Attorney for the Maricopa County Attorney's Office in Arizona, and I'm here representing the state. I will be asking for some rebuttal time, and we'll watch my clock accordingly. This Court has always had one very reasonable request of governments that are coming in with this kind of case. That reasonable request has been that you need to connect the illegal activity, the stuff that goes off at the airport, with the illegal drug activity. Candidly, the Court, the government, was a little bit slow in understanding that request from the Ninth Circuit Court. Eventually, however, the government got the position, and in the 2000-2001 case of $22,000 in currency, and then again in the 2001-2002 case of $42,500, there was certainly an indication that the light had come on and the government was doing the kinds of things the Court wanted it to do with dog alerts. The State is here because it believes it has done exactly that in the district court, in the trial court, and has been precluded from being able to handle a fair trial. What was the ultimate tie between the defendant's suspicious activity, or the perspective of the defendant's suspicious activity, and the statute which related to drug activity? What was the tie? In the – in Arizona, the connection has to be, in any manner or part, to any kind of illegal narcotic activity. Section 2301 says that any activity that has anything to do with illegal drugs, and it's not any more specific than that. So your tie is the dog alert? No, Your Honor. The tie is, that's what makes the jump that the Court has always requested from the illegal activity. Remember, the district court says, look, you look at what was going on at the airport. There was certainly something illegal going on. And the district court concedes that in its opinion. Right. But it says you need to make a jump to connect that to illegal drugs. And how did you do that? We do it the way the Ninth Circuit Court has always told us to do it, and that is by bringing in what the Court calls a sophisticated dog alert. But I don't think you did. A sophisticated dog alert means one that, as far as I can read the cases, requires a dog to alert to the kinds of byproducts that you find on drugs that indicate recent contact, not just generally drugs, because all money has been contaminated with drugs, apparently. So you have to be more specific than just a reaction to drug contact with money. And that's exactly what this Court said in the $30,000 case back in 1989 and again in 1992 when the Court, when the State was coming in, the government was coming in and saying, look, we have a drug, we have a dog alert. I didn't see your dog alert being the kind of sophisticated dog alert that the law requires. What have I missed? In the case of $22,000. What was your dog alert to? What did your dog alert to? Our dog alerts by our own affidavit that's submitted into the opposition of the motion for summary judgment. Our dog alerts to, and remember we have an expert who goes in by affidavit and says, look, I have looked at these records. I have looked at the dog's records. And the records indicate that this dog does not alert to currency in general circulation, which has been this Court's concern back in 1989. And our expert says, I've looked at the records, and the records say it is not alerting to that. The expert also says, I'm a trainer, and I train this dog, and I know that this particular alert by this particular dog means that this money has been in direct contact or recent proximity with narcotics, which is exactly what this Court asked for from the government in the $22,000 case. But looking at the affidavit, and maybe it's a question between a sophisticated dog and a sophisticated dog alert, but he says, Mr. Green says, based on my background, training, and experience, the alert to the currency by this dog indicates that the currency had been exposed to a sufficient quantity of illegal drugs for a sufficient period of time to allow the odor of those drugs to be absorbed into the currency. That's the very point that was made in the sophisticated dog cases, that what you want is an alert to recent drug odor, not that that's contained in the currency. But again, Your Honor, two responses. Remember that this is at a pretrial level. This isn't a case that's coming out of a trial. This is a case where an affidavit is submitted saying the dog is alerting to currency that has been in direct contact or recent proximity. So you're telling me you have more in reserve that you're going to use, more evidence? Well, Your Honor, I mean, the Rose-Furton case, the Seventh Circuit case, has called into question whether that's the scientific basis that caused this Court concern back in 1989 is a really good scientific basis. This Court has said that it's become more discriminating as to dog alerts. If the Court recalls its case in the $22,000 case and the $42,000 case, a sophisticated dog alert required two things, very reasonable things. We want to know that a dog is not hitting on currency that's in general circulation. We really want to know that. Now, the Seventh Circuit Court has said that. That's not exactly what Detective Green's affidavit says in paragraph 10. Yes, that's exactly what it's saying. It's saying he's alerting to currency in general circulation, not to the byproducts of drugs recently in contact with the money. I hope that's not what the affidavit is saying. Well, it is, and the problem is it doesn't square up. I'm not criticizing anybody, but it doesn't seem to square up with the $22,000 case. Here, the government presented evidence that the dog would not alert to cocaine residue found on currency in general circulation. Rather, the dog was trained and would only alert to the odor of a chemical byproduct of cocaine called methylbenzoate. The government provided evidence that unless the currency Malhom was carrying had recently been in proximity of cocaine, the detection dog would not have alerted to it. That evidence is not disputed. So, in other words, there's an alert inside of an alert. There's one alert, uh-oh, cocaine. This money has been near cocaine long enough to have picked up the general scent of cocaine. But then there's another sophisticated one that identifies a chemical that evaporates off the money. And so you can draw the inference that it was recent contact rather than contact last year. And I don't read your affidavit as going as far as $22,000 seems to require. Your Honor, I believe the affidavit does both of those. It says, I've looked at these dogs' records. This dog does not alert to, it's been trained. It's a sophisticated, trained alert. It doesn't alert to money that you pull out of your pocket. It doesn't alert to that. It alerts only to money that has been in direct or recent contact with narcotics. And where does it say recent? I believe it's on the second page of the affidavit. Based upon my background, training, and experience, the currency that has been exposed to a sufficient quantity of illegal drugs for a sufficient period of time to allow the odor of those drugs to be absorbed into the currency is more likely than not proceeds involved in illegal drugs. You're talking about Green's affidavit? Yes, Your Honor. There's no recent on the second page. The affidavit is still designed to meet the court's criteria. It doesn't. It doesn't say recent. It says we're training, we're reacting to money on drugs on money. Okay. But if you, with all due respect, Your Honor, what the court was evidencing concern as it came out of the 1989 and 1992 cases was that you want, and it calls us a sophisticated dog alert in the $22,000 case. We don't want a dog that alerts to currency in general circulation, and we want some evidence that there's been a direct contact with narcotic drugs. Okay. Read me the part of Detective Green's affidavit that makes that distinction. Because, frankly, no matter how often I read it, I can't get it. It says the dog alerts only to odors of illegal drugs. It doesn't give us any time period. Your Honor. It doesn't say recent. Your Honor, the State's position would be, though, that the court's concern has been that it not alert to general currency, that it not alert to currency in general circulation. That's the point. It doesn't. That's the point. It does not alert to currency in general circulation that may at some time over the last 15 years have come into contact with an illegal drug. But what the court is, what the affidavit is saying is that that's not, that dog is not going to hit on that. It doesn't say it. It just doesn't say it. Do you want to save the balance of your time for rebuttal? Yes, Your Honor. I've got about half a minute. The word that you told us was there isn't, recent. It's not there. Mr. Jones. Good morning, Your Honor. May it please the Court. My name is Lindsey Jones for the appellee, Muhammad D. Sumerai. I recognize that two of the members of this panel have offered the opinions that I think are the most controlling precedent at issue here. We've had a major argument, I think. I think so, Your Honor. I do, however, note and I believe that the counsel has referred to a case in the Seventh Circuit, and that case obviously calls the challenges, actually, the precedent that two of Your Honors have offered. To some extent, I'd like to address another analysis about the reliability of the dog alert that I think is square on both the Seventh Circuit and the Ninth Circuit case law in this issue. The training of this dog, the same affidavit that the Court addressed, Detective Green is the expert. This question is about the whole dog standard with his expertise and his being a does not in his affidavit indicate anything about this dog's, the specific facts about this dog's training. That is, the percentage of times that this dog was held reliable or alerting to drugs or currency that would turn into drugs. In other cases, they've looked at that issue and found that training was sufficient when the dogs had hit 97% of the time where there were drugs or cash, or 70% of the times where there was drugs. There's nothing on the record about the reliability of this dog in terms of its past performance to assume that this specific dog might be reliable in this instance. In addition, there's a question of the methodology in this case. The affidavit talks about the cash being taken from Mr. Sumerai. It doesn't indicate anything, it doesn't indicate anywhere in any of the records that the dog ever alerted to the luggage that Mr. Sumerai had or his person for the presence of drugs. All it indicates is that this dog responded to a cardboard box. The history in terms of the search doesn't indicate that after the dog alerted to the cardboard box that the money was taken from the cardboard box for an independent check. So we have this drug box that's being used. We don't know anything about whether this drug box was contaminated in and of itself. Didn't the dog independently alert to the money after it was taken out of the box? I'm sorry? Didn't the dog independently alert to the money after it was taken out of the box? I recall, Your Honor, from the record, again, looking at Detective Mark Green's affidavit as well as the police records, is that the money that the dog scratched at the box. Interestingly enough, that report is from a Detective Jessing who was not present during the dog search but received information from a Detective Barton. Then Detective Jessing relayed this information in an affidavit. So there's a hearsay issue there, too, about what was actually observed with regard to the dog. So in terms of reliability, there's all these factors about whether this dog was- Didn't the dog independently alert to the currency? Not from the affidavit. It's my understanding that it was just the box, that the only account that's given in any of the records is that the dog scratched the box. And that Detective Green, based on his experience, that was an indicator that the dog had found drugs. And we would submit it could have been that he was responding to a contaminated box. Well, you're telling us Connor was not there, and so he couldn't tell us that Connor, a dog trained in narcotics protection, alerted to the order of illegal drugs on the currency? I believe there were two affidavits, an affidavit by Detective Jessing and Detective Mark Green. Mark Green had indicated that he had referred to the history of the dog to testify that he believed that the dog was reliable. Detective Jessing indicated that a report was made to him by Detective Barton about the result of the dog search. And those are the only statements under oath by any of the witnesses that were proffered before the Court on summary judgment. The other issue that I think is relevant to the Court in terms of looking at this issue and the balance of interest between the State and a citizen of this country in terms of looking at civil liberties is that the officer, in terms of as counsel for the State, had talked about the affidavit being designed to fit with this Court's precedent. We'll note that the affidavit asserted at one point that Mr. Sumerai had a criminal, a history of a criminal conviction for the distribution and possession of drugs. They conceded that that was a false statement. I think that has to be looked at in the context here. Also, I think the mere fact that, and I don't know whether I need to address all the other factors, the aggregate facts, but because the two members of the panel have offered the opinions that are familiar with it, that the other elements, the punditry of the money that was relied upon by the State, wasn't in cellophane, it was within the luggage by itself, and the Court has found that not to be relevant for making a connection to drug activity. With a focus on his statements, it's important to know that Mr. Sumerai is an immigrant from Gambia on the east coast of Africa and that his first language is French. Now, the State had a recorded conversation in the interview that took place where they said that he consented to the search. They also pointed out that he was dishonest or inconsistent with his response to the amount of money. The best evidence would have been that recorded interview to see exactly how that conversation transpired, whether there was a full understanding between what Mr. Sumerai and the police were talking about on his part, that is Mr. Sumerai's part. He is my client, and I know that I speak with him to be an interpreter. Also, they asked him how much he had on his purse, and he said approximately $4,000. They found $5,045, and indicated that shows dishonesty. Again, I believe it's in the context of the language barrier. What were you trying to insinuate with respect to the boxing item or the follow-up? Well, there was a case, actually the Seventh Circuit case that the State points out, or I believe the State, the Seventh Circuit case, the Calhoun case, that challenges this Court's precedent. The claimant in that case challenged the methodology, argued that there might have been cross-contamination. Well, here the box came from the officers, and the dog, they say they cleared the area first with the dog, and the dog didn't alert to the box or anything else, that's what they say in the police report, so the box appears clean. Then they put the money in the box to see what the dog does, and the dog then starts attacking the box. I mean, I think it's pretty clear at that point that the dog's alerting to what they just put in a clean box, the money. Well, actually, Your Honor, I think that assumes certain facts. I think that the description says that the dog cleared the room that consisted of boxes and papers and storage. I first used Connor and conducted a clearing of the office area, which included a cabinet, countertops, boxes, and a traffic cone. Then, after it had been cleared, we put the currency in the box, and the dog went after the box. It says, and it doesn't, I mean, you're assuming that the box that they placed the money in was a box in the room that they cleared. That's not clear. Is that a fair assumption from what he says? A fair assumption, I don't know if fair is the right, I don't know if I would call that fair. He put the money within a cardboard box in the cleared area. He put the cardboard box in the cleared area. He said the area had been cleared, and then he put it in a box. I think that's what some of the other people. It's the weakest of your arguments. I drop it. I do believe, however, though, that, Your Honor, I'd like the court to focus on and appreciate the issue about the training of the dog itself, its record, because I think that's an independent basis on the reliability of the dog that satisfies both the Seventh Circuit and the Ninth Circuit, and that the dog, there is no record available before the district court that indicates that the dog has been certified based on its reliability. It doesn't show anything. It could have a 40 percent false alert record. We don't know that, and that's evidence that the state could have made. In sum, Your Honor, we believe that the state has just failed to meet its burden based on this court's precedent. We embrace the district court's analysis because it embraces this court's precedent and adopted it as our own. Thank you, Your Honor. Thank you. A few minutes. We have about a minute for rebuttal. Your Honor, the state asks that the court not place too much emphasis on the recentness of it, of the content. If the court is satisfied that the currency is the generally circulated currency is not being alerted to, that means that the only currency that's being alerted to is currency that has some direct connection with drugs. Yeah, but when? You see, it's as I said with respect to Sutter. Sutter's handler submitted a declaration stating that Sutter does not alert to cocaine residue found on currency in general. Sutter alerts to a byproduct of cocaine which does not linger on currency. You don't have that here. And to answer the question when, I don't know when, but soon enough so that your money won't be alerted by the dog. But where is that? This money is different from your money. Where is that distinction? Because the — Executive Green's affidavit. It's an inference that we're allowed to have under a motion of summary judgment. Your money is not the money that this dog alerted to. The dog alerted to money that had been in direct contact with drugs differently than your money. Let's assume for the moment that the dog does not hit on currency in general circulation. That means that whatever contact your money has had, it has not been the kind of contact that Mr. Sumire's money has had. Mr. Sumire's money has had some contact that is different from your money. The State is being asked to make a connection to survive a motion for summary judgment only between the illegal activity at the airport, which the district court deems as admitted, and some kind of contact with the drugs. The State believes that the court does that with evidence that indicates that there's not a contact with money in general circulation. Thank you. Thank you, Your Honor.
judges: Trott, T.G. Nelson, Paez